IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JOHN DOE, ) <br> ) <br>     *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> William Lee, Governor of the State ) <br> of Tennessee, in his official capacity; ) <br> ) <br> And, ) <br> ) <br> David Rausch, Director of the Tennessee ) <br> Bureau of Investigation, in his official ) <br> capacity; ) <br> ) <br>     *Defendants*. ) | Civil Action No: <br><br> Judge <br><br> Magistrate Judge |

## COMPLAINT

1. Plaintiff John Doe[1] brings this 42 U.S.C. § 1983 action alleging that Defendants have violated, and continue to violate, Plaintiff's Constitutional right against *ex post facto* punishment through retroactive imposition on him of Tennessee's sex offender restrictions and monitoring requirements. Plaintiff seeks declaratory and injunctive relief against the Defendants.

## PARTIES

2. Plaintiff John Doe is an adult resident of Loudon County, Tennessee.

3. Defendant William Lee is the Governor of the State of Tennessee.

---

[1] Plaintiff will be filing a motion to proceed under pseudonym and for protective order shortly after filing this complaint.

1

4. Defendant David Rausch is the Director of the Tennessee Bureau of Investigation, a state agency with a primary enforcement role in Tennessee's sex offender registration scheme.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are state officials whose offices are located in this district.

## FACTUAL BACKGROUND

### A. Plaintiff's Background

6. Plaintiff is a sixty-one-year-old married man.

7. Plaintiff is required under Tennessee law to be registered on Tennessee's Sex Offender Registry (T.C.A. § 40-39-201 et seq.) due solely to a single criminal conviction for a case involving a sex offense that occurred in 1999.

8. Solely due to Plaintiff's 1999 offense, Tennessee law declares him a "Violent Sexual Offender" in perpetuity, and subjects him to lifetime registration on the sex offender registry and a host of restrictions, obligations, and punishments.

9. The bulk of Tennessee's sex offender registration, monitoring, and enforcement laws were passed after Plaintiff committed his qualifying offenses.

### B. Tennessee's Sex Offender Registration and Monitoring Regime

10. In 1994, Tennessee passed its first ever sex offender registry law. However, this law required only that offenders register in a private law enforcement database.

11. Tennessee continued expanding the registry laws through the nineties, increasing reporting requirements and, eventually, making sex offender registrations public for those who had committed their offenses after July 1, 1997.

2

12. Tennessee continued periodically passing laws expanding its sex offender registration and monitoring regime, until in 2004 Tennessee passed sweeping new restrictions on convicted sex offenders hereinafter referred to as "SORA."

13. SORA imposed stringent registration and reporting requirements on statutorily defined "sexual offenders," "violent sexual offenders," and "offenders against children," and severely limited where sex offenders could live, work, and go.

14. SORA applied retroactively to past offenders, imposing its labels, restrictions, obligations, and punishments even where an offender's only qualifying offenses had occurred prior to SORA's enactment.

15. In the years since 2004, Tennessee has periodically enacted amendments to SORA, almost all of which have made it even more draconian, intrusive, and punitive.

16. Under present law,[2] Tennessee's SORA regime requires the following affirmative obligations from Plaintiff, on pain of criminal prosecution:

    a. Quarterly registration with local law enforcement;

    b. Payment of annual registration and monitoring fees;

    c. Re-registration within forty-eight hours if Plaintiff relocates to a new municipality or county, even on a temporary basis for work or school;

    d. When in public, <u>always</u> carry his state-issued identification with him, which must have a sex offender designation on it.

17. Tennessee's SORA regime includes a "Tennessee Sex Offender Registry" website maintained by the Tennessee Bureau of Investigation ("TBI"), which makes the following information about Plaintiff public:

---

[2] T.C.A. § 40-39-201 *et seq*.

a. Name

   b. Classification of "VIOLENT"

   c. Status of "ACTIVE"

   d. Date of birth

   e. Full criminal history

   f. Residential address

   g. Race and gender

   h. Last date of information verification

   i. Most recent photograph submitted to TBI

   j. Driver's license and/or state identification number

   k. Physical description including height, weight, eye color, hair color, tattoos, scars, and marks

   l. Criminal history, including the date of all arrests and convictions, probation and/or parole status, and the existence of any outstanding warrants

   m. Address of Plaintiff's employer(s)

   n. License plate number and description of Plaintiff's vehicle(s)

18. SORA prohibits Plaintiff from the following, on pain of felony criminal prosecution:

   a. Working or residing within 1000' of a school, day care center, other child care facility, public park, playground, recreation center, or public athletic field;

   b. Residing within 1000' feet of the victims from Plaintiff's criminal case, or any of the victims' family members; coming within 100' of the victims; or, contacting the victims without their consent.

c. Any of the following, unless picking up or dropping off his own child at school after giving written notice of his sex offender status to the school's principal, or attending a conference with officials at a school, day care, child care, recreation center, or playground with written permission from the administrator:

   i. Entering the premises of any school, day care center, other childcare facility, public park, playground, recreation center, or public athletic field when there is reason to believe that children may be present;

   ii. "Stand[ing], sit[ting] idly, or remain[ing]" within 1000' feet of any school, day care center, other child care facility, public park, playground, recreation center, or public athletic field "while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there;"

   iii. Being within any vehicle owned, leased, or contracted by a school, day care, childcare, or recreation center when children under 18 years of age are present;

d. Residing with two or more other convicted sex offenders;

e. Being alone with a minor in a "private area."

f. Residing with, or having an overnight visit in, a place in which a minor is present.

19. SORA authorizes the following additional optional punishments against Plaintiff:

a. Public libraries may ban Plaintiff from their premises;

b. Municipalities may implement a "community notification system" to alert members of the public should Plaintiff indicate his intention to move there;

    c. A municipality where Plaintiff resides may charge Plaintiff up to $50 per year toward the cost of its community notification system.

### C. Specific Impacts of SORA on Plaintiff

20. SORA's impositions, detailed at ¶¶ 16 – 19, have substantially interfered with Plaintiff's career, family, reputation, and overall enjoyment of life and will continue to substantially interfere so long as Plaintiff is subject to them.

21. Under current law, Plaintiff will continue to be subjected to these SORA impositions for the rest of his life.

22. SORA requires Plaintiff to report quarterly, and each time he reports he must sign his acknowledgment of the SORA rules. The rules are complex, and each time he reports it seems like there are new rules in place. Consequently, Plaintiff routinely feels anxiety that he could be arrested because of a rule change that he is not even aware of.

23. Plaintiff has to pay the TBI registration fees of $150 a year, or provide his personal tax information as proof he was unable to come up with the money due to financial strain or having no finances available.

24. Plaintiff is self-employed in the HVAC industry, and the registry has had a significant negative impact on Plaintiff's business. Plaintiff effectively cannot advertise his business in his name, because internet searches on him pull up the TBI's sex offender registry. Plaintiff is prohibited from attending industry conventions because of his registry status, and is effectively barred from expanding his business to other states because of his registry status. SORA has also hindered Plaintiff's ability to lease commercial space for his business, which in turn limits the growth of his business.

6

Case 3:23-cv-01187    Document 1    Filed 11/13/23    Page 6 of 10 PageID #: 6

25. SORA negatively impacts Plaintiff's marriage. The restrictions and shame that SORA inflicts on Plaintiff effectively impacts his wife as well, limiting their social network and their ability to attend gatherings where children might be present. Plaintiff and his wife are prohibited from decorating their home for the holidays, which weighs heavily on Plaintiff's wife. Law enforcement periodically comes to Plaintiff's home to request permission to search, and when they conduct these searches they also search through Plaintiff's wife's personal belongings. This is invasive and inflicts distress on Plaintiff's wife and marriage.

26. SORA prevents Plaintiff from being a full member of his extended family and friend network. Plaintiff has been unable to attend weddings, family events, celebrations and other milestones. Plaintiff does not have children or grandchildren, but he does have nieces and nephews and wishes he could be more connected to his extended family. Plaintiff would like to be able to host family members to visit, but cannot have children staying in his home due to SORA. These restrictions prevented Plaintiff from visiting with his father and sister before their deaths.

27. SORA also restricts Plaintiff's ability to travel. Plaintiff is restricted from staying with friends or family that have children, and is prohibited from many hotels and motels. Plaintiff would like to be able to obtain a passport that does not mark him as a sex offender, and take his wife on a cruise.

28. SORA also restricts Plaintiff's recreational life. Plaintiff is a huge University of Georgia Bulldogs fan, and wishes he could attend the games. Plaintiff would love to be able to eat places or go to the gym without worrying about whether it contains a play center or daycare for children. Plaintiff would love to go to the mall with his wife to simply

purchase shoes or something for the holidays. Plaintiff would love to be able to take his wife to fairs and other community events.

29. Plaintiff would love to volunteer for organizations and give back, especially through church but cannot currently do so because of being on the SOR.

30. Plaintiff would love to enroll in trade school to further his education and his career, but his registry status is an obstacle to attendance.

31. Plaintiff has been advised that he would have to pay higher rates for healthcare, life insurance and other insurance due to being a registered sex offender.

32. Plaintiff fears being targeted by people due to his SORA status. Plaintiff was harassed by neighbors when he was first released from prison after his offense, with the neighbors petitioning for Plaintiff and his wife to be kicked out and forced to move from the neighborhood.

33. Because of these and a host of other impacts on Plaintiff and his wife, Plaintiff seeks immediate release from SORA.

### CLAIMS FOR RELIEF

**COUNT I: EX POST FACTO VIOLATION IN VIOLATION OF ARTICLE I, § 10 OF THE U.S. CONSTITUTION (42 U.S.C § 1983)**

**(ALL DEFENDANTS)**

34. Plaintiff hereby reincorporates paragraphs 1 – 33 by reference.

35. As applied to Plaintiff, Tennessee's SORA regime constitutes "punishment" within the meaning of the *ex post facto* clause of Article I, § 10 of the U.S. Constitution.

36. Defendants Lee and Rausch are proper official capacity defendants because they both have roles in enforcing Tennessee's SORA regime.

37. Plaintiff is entitled to declaratory and injunctive relief prohibiting Defendants from continuing to enforce Tennessee's SORA regime on him in violation of his constitutional right against *ex post facto* punishment.

## REQUEST FOR RELIEF

**WHEREFORE**, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.
2. That the Court grant a preliminary injunction enjoining Defendants from enforcing Tennessee's SORA regime against Plaintiff solely on the basis of his 1999 offense.
3. That judgment for Plaintiff enter against the Defendants on each count.
4. That the judgment declare that it is unconstitutional for Tennessee to retroactively impose its SORA regime on Plaintiff solely on the basis of his 1999 offense.
5. That the judgment permanently enjoin Defendants from enforcing Tennessee's SORA restrictions against Plaintiff solely on the basis of his 1999 offense.
6. That Plaintiff be awarded his attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).
7. That the court costs in this matter be taxed to Defendants.
8. That Plaintiff be awarded all other relief to which it may appear he is entitled in the interests of justice.

Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
Relentless Advocacy, PLLC
2901 Dobbs Ave
Nashville, TN 37211
T: (615) 429-4717 / F: (615) 229-6387
E: Kyle@relentlesslaw.com